# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ELAINE S.,

      **Plaintiff,**

v.                                       Civil Action 3:22-cv-240
                                           Judge Michael J. Newman
                                           Magistrate Judge Jolson

COMMISSIONER OF
SOCIAL SECURITY,

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Elaine S., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). For the following reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.**     **BACKGROUND**

Plaintiff filed her application for SSI on July 20, 2020, alleging that she was disabled beginning August 31, 2019, due to severe irritable bowel syndrome (IBS), chronic pain, Post-traumatic stress disorder (PTSD), dissociative disorder, "Degralization disorder," fibromyalgia, migraines, anxiety, spinal spondylosis, and major depression. (R. at 172–82, 207). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing. (R. at 29–54). The ALJ denied benefits in a written decision on June 24, 2021. (R. at 12–28). That became the final decision of the Commissioner when the Appeals Council denied review. (R. at 1–6).

Plaintiff then filed the instant case seeking review of the Commissioner's decision. (Doc. 1). The Commissioner filed the administrative record (Doc. 8), and the matter is now ripe for consideration. (Docs. 9, 10, 11, 13).

### A. Relevant Hearing Testimony and Statements to the Agency

The ALJ summarized Plaintiff's hearing testimony and statements to the agency as follows:

> [Plaintiff] alleged difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and using her hands (C3E). [Plaintiff] alleged that she can lift only five pounds and walk no more than one-half mile (C3E). [Plaintiff] alleged difficulty with memory, completing tasks, concentration, understanding, and following instructions, but no difficulty getting along with others (C3E/6). [Plaintiff] alleged difficulty with handling stress and changes in routine (C3E/7). [Plaintiff] testified to similar limitations, including that her headaches last for three days at a time, and she treats them with medical marijuana (Testimony).

(R. at 20).

> [Plaintiff] testified that she has headaches three to four times per week, and that each headache lasts three days at a time (Testimony). [Plaintiff]'s reports of disabling migraine-type headaches are inconsistent with her ongoing non-compliance with smoking cessation with nicotine, as smoking nicotine is known to both cause and exacerbate headaches (SSR 16-3p). [Plaintiff] currently smokes cigarettes every day (C5F/3; C8F/2). [Plaintiff] testified that she uses medical marijuana for her headaches (Testimony). [Plaintiff] alleges that her headaches have not improved, yet she also alleges that she continues to smoke marijuana for her headaches and she told her providers that her marijuana has improved her symptoms (C3F/8) (SSR 16-3p).

(R. at 20–21).

### B. Relevant Medical Evidence

The ALJ discussed Plaintiff's medical evidence as follows:

> [Plaintiff] told her provider that her migraines improved but she still has other headaches (C3F/8). Moreover, while [Plaintiff] testified that she has headache symptoms almost every day, she denied having headaches several times to her providers (C2F/20, 22, 31, 39, 48, 60, 76; C3F/8; C5F/4). On February 10, 2021, the same day that she submitted a Request for Hearing, [Plaintiff] called her provider and reported that she suddenly has been having migraine headaches again (C8F/15; C6B; C7B). Further, even when [Plaintiff] did report having a headache to her provider, she had normal neurological findings, and did not report aura,

> phonophobia, or photophobia (Record). [Plaintiff] also has a history of fibromyalgia and chronic pain associated with lumbar degenerative disc disease (C2F; C5F). [Plaintiff] has required only very conservative treatment for her impairments and reports of pain (Record). In addition, [Plaintiff]'s non-compliance with smoking cessation recommendations are inconsistent with her reports of chronic pain as and smoking cigarettes is known to exacerbate chronic pain (Record). The objective examination findings consistent indicate that [Plaintiff] consistently has normal gait, motor strength, and sensation despite pain with range of motion (C3F/43, 48, 53; C5F/5; C8F/3). Additionally, the record contains new objective evidence since her prior ALJ Decision, and there is no objective evidence supporting a finding that [Plaintiff] requires a sit-stand option (C1A versus Record).
>
> \*\*\*
>
> [Plaintiff] also has severe insomnia; depressive disorder; anxiety; and post-traumatic stress disorder ("PTSD") (Record). The objective treatment notes consistently indicate that [Plaintiff] has normal memory, including intact recent memory and intact remote memory (C3F/23, 28, 33, 38, 43, 48, 53; C7F/3, 8). [Plaintiff]'s objective treatment notes consistently indicate that [Plaintiff] has normal concentration ability, including "focused" attention and concentration with normal thought processes and thought content (C3F/23, 28, 33, 38, 43, 48, 53; C7F/3, 8). [Plaintiff]'s objective treatment notes reveal that [Plaintiff] has normal speech, associations, and receptive language skills (C2F/72; C3F/23, 28, 33, 38, 43, 48, 53; C7F/3, 8). [Plaintiff]'s objective treatment notes consistently indicate that [Plaintiff] has normal or "good" judgment and insight, with normal fund of knowledge (C3F/23, 28, 33, 38, 43, 48, 53; C7F/3, 8; C8F/3). \*\*\*

(R. at 21).

**C. The ALJ's Decision**

The ALJ found that Plaintiff has not engaged in substantial gainful activity since July 20, 2020, the application date. (R. at 17). The ALJ determined that Plaintiff suffered from the following severe impairments: migraine-type headaches; fibromyalgia; lumbar spine degenerative disc disease; insomnia; a depressive disorder; anxiety; and post-traumatic stress disorder ("PTSD"). (*Id.*). Still, the ALJ found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (*Id.*).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

[Plaintiff] has the residual functional capacity to perform light work as defined in 20

3

>CFR 416.967(b) except: (1) occasional stooping and crawling; (2) frequent crouching, kneeling, balancing, and climbing of ramps and stairs; (3) no climbing of ladders, ropes, or scaffolds; (4) no work around hazards, such as unprotected heights or dangerous machinery; (5) limited to performing simple, routine, repetitive one and two step tasks; (6) occasional and superficial contact with coworkers, supervisors, and the public, where superficial contact is further defined as the individual is able to receive simple instructions and ask simple questions, and receive performance appraisals, but is unable to engage in more complex social interactions, such as persuading other people or resolving interpersonal conflicts; (7) no work that involves teamwork or tandem tasks; (8) no fast-paced work or work that involves strict production quotas; (9) limited to jobs that involve very little, if any, change in the job duties or the work routine from one day to the next.

(R. at 19–20).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 20).

The ALJ determined that Plaintiff has no past relevant work. (R. at 22). Relying on the vocational expert's testimony, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, such as a cleaner/housekeeper, produce sorter, or a price marker. (R. at 23). He therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since July 20, 2020, the date the application was filed (20 CFR 416.920(g))." (*Id.*).

## II.     STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health &*

4

*Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

In her Statement of Errors, Plaintiff contends that the ALJ "merely repeated the findings of the state agency consultants and found the opinions of the state agency psychologists vaguely 'consistent with the overall objective evidence' and the opinions of the state agency physicians 'somewhat consistent with the overall objective evidence' without articulating the persuasiveness of the supportability factor." (Doc. 9 at 7–8).

The Commissioner counters that the ALJ properly based Plaintiff's physical and mental RFC on the medical opinions of the state agency reviewing physicians and psychologists, whose assessments he determined were mostly persuasive. In doing so, says the Commissioner, the ALJ more than adequately explained why their medical opinions were consistent with the evidence as a whole, which he discussed in great detail. While the ALJ did not specifically mention the magic word "supportability" in relation to these assessments, the ALJ's decision, when considered as a whole, reflects that he adequately explained this factor in finding these opinions persuasive. (Doc. 10 at 6–10). The Commissioner further says that the RFC was more restrictive than any medical opinion of evidence. So, even if the ALJ erred by not fully articulating the supportability factor, it was harmless. (*Id.*).

Plaintiff counters in her supplemental reply that if the Commissioner's harmless error argument is accepted, then an ALJ would never need to articulate the persuasiveness of the 20

C.F.R. § 416.920c factors when evaluating medical opinions or prior administrative findings so long as the ALJ finds them persuasive and adopts their findings. (Doc. 13).

A [Plaintiff]'s RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A [Plaintiff]'s RFC assessment must be based on all the relevant evidence in his or her case file. *Id.*

The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[1] 20 C.F.R. § 416.913(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the [Plaintiff]'s] medical sources." 20 C.F.R. § 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 416.920c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 416.920c(b)(2). When evaluating supportability,

---

[1] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . .

§ 416.913(a)(2), (5).

6

the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 416.920c(b)(2).

Thus, the role of the ALJ is to articulate how he considered medical opinions and how persuasive he found the medical opinions to be. *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). The role of the Court is not to reweigh the evidence, but to make sure the ALJ employed the proper legal standard by considering the factors and supported the conclusion with substantial evidence. *Id.*, at *14.

When evaluating the opinions of state agency physicians and psychologists, the ALJ determined:

> On October 5, 2020, and December 24, 2020, State Agency psychologists, Dr. Delcour and Dr. Dietz, reviewed [Plaintiff]'s file and objective evidence (C4A; C6A). Dr. Delcour and Dr. Dietz concluded that [Plaintiff] has no more than moderate limitations in any area, including only mild limitations in understanding, remembering, or applying information. Dr. Delcour and Dr. Dietz' findings are consistent with the overall objective evidence, and their opinions are uncontroverted. Therefore, Dr. Delcour and Dr. Dietz' opinions are persuasive.
>
> On October 5, 2020, and December 24, 2020, State Agency physicians, Dr. Klyop and Dr. Cacchillo reviewed [Plaintiff]'s file and objective evidence (C4A; C6A). Dr. Klyop and Dr. Cacchillo concluded that [Plaintiff] is limited to light work, and correctly recognized that the prior ALJ limitations do not apply, and neither found that a sit-stand option was warranted by the objective evidence. However, in curbing the evidence in a light most favorable to [Plaintiff], the undersigned finds that [Plaintiff] has greater postural limitations, especially to crawling. Thus, Dr. Klyop and Dr. Cacchillo's findings are somewhat consistent with the overall

7

>objective evidence. Therefore, Dr. Klyop and Dr. Cacchillo's opinions are somewhat persuasive.

(R. at 22).

Plaintiff's assignment of error focuses on the supportability factor, arguing that "[f]or the ALJ to have adequately discussed the supportability of the opinions of the state agency consultants, the ALJ needed to evaluate what these sources said they each based their opinions on—not simply how the opinions compared to the record evidence as a whole . . . ." (Doc. 9 at 8).

At the outset, the Court notes the inherent lack of clear delineation between supportability and consistency when an ALJ evaluates the opinion of a reviewer, like a state agency physician, who forms her opinion after a holistic review of the medical evidence of record. Consider, for example, a case in which there has been little or no change to the medical evidence of record between the time the reviewer issues her finding and the ALJ conducts a hearing. In that instance, the evidence upon which the reviewer supported her finding—the complete medical record at the time of her finding—would be virtually identical to the evidence with which the opinion is consistent or inconsistent—the complete medical record at the time of the ALJ's hearing. The ALJ is left in a position in which she is unable to consider supportability without simultaneously addressing consistency, and vice versa. A plaintiff might semantically allege error in such a case— saying that the ALJ addressed consistency only because she compared the reviewer's opinion to the entirety of the record. But the ALJ would have still fulfilled the purpose of the regulation: to give a fulsome review to medical opinions and prior administrative findings, paying particular attention both to how the opinions are internally supported and explained, and how they compare to the record as a whole.

Contrast this with a medical opinion rendered by a treating physician. There, supportability and consistency are more clearly distinguished. The physician supports her opinion with her own

8

treatment notes, objective medical findings, and experience with the plaintiff. Her opinion is consistent (or not) with the entire universe of the medical evidence of record.

Other courts in this Circuit have considered this trait of the supportability/consistency framework. In *Vaughn v. Commissioner of Social Security*, the Western District of Tennessee addressed an allegation that an ALJ had not properly assessed the supportability of opinion evidence provided by a physician acting as a "reviewing specialist[ ] . . . ." No. 20-cv-1119-TMP, 2021 U.S. Dist. LEXIS 134907, at *24 (W.D. Tenn. July 20, 2021). The court found that consistency had sufficiently been addressed by the ALJ, because she explicitly detailed why the opinion was inconsistent with other aspects of the record. *Id.* at *25–27. But, the ALJ had not meaningfully discussed supportability. *Id.* at *27–32.

Notably, however, the physician based his opinion on other medical records "he reviewed, which completely encompasse[d] the relevant period of discovery." *Id.* at *30–31. In other words, the physician operated in the manner of a state agency reviewer, conducting a holistic review of the medical evidence of record before rendering an opinion. So, the court determined that while the ALJ had not observed 20 C.F.R. § 404.1520c to the letter, she had:

> achieved the regulations' goal of providing notice to [the plaintiff] of why [the physician's] opinion was not persuasive. [The physician]'s opinion was entirely predicated on a review of [the plaintiff]'s medical history and, when recounting that same medical history, the ALJ identified several instances where [the plaintiff]'s medical records did not support a finding of disability. As such, the ALJ's discussion of [the plaintiff]'s medical history is, in essence, a discussion of whether the evidence [the physician] reviewed could actually support his conclusions. Thus, while not being a direct attack on the supportability of [the physician]'s opinion as contemplated by the regulations, the ALJ's opinion is only one step removed from articulating why she believed the basis for [the physician]'s opinion was faulty, i.e. an explanation of the supportability factor.

*Id.* at *34–35. Accordingly, the court concluded that any error in the assessment of the opinion was harmless and remand was not necessary. *Id.* at *36.

This same harmless-error analysis should apply to an ALJ's decision which clearly

9

discusses the consistency of a state agency reviewer's opinion, when that same opinion was formed upon records which encompassed the relevant period of discovery and the ALJ elsewhere discusses those records in detail. Here, because the record had not materially developed from the time of the state agency findings to the time of the ALJ's decision, the ALJ's discussion of the findings can be understood to touch upon both consistency and supportability.

Though Plaintiff characterizes the ALJ's discussion of the state agency consultants' opinions as addressing only consistency (*see* Doc. 9 at 7–9), the ALJ addressed particular pieces of medical evidence upon which the consultants based their findings—the cornerstone of supportability. Specifically, the ALJ addressed the medical reports from New Carlisle Community Center, Mental Health Services for Clark and Madison Counties, and Dayton Outpatient Center (R. at 18–22 (citing R. at 272–414, 453–59, 484–530)), which were all used to formulate the state agency consultant's medical opinions. (*See id.* at 85–92, 94–101). "The Sixth Circuit has made clear that an ALJ's decision must be read as a whole." *Carpenter v. Comm'r of Soc. Sec.*, No. 2:18-CV-1250, 2019 WL 3315155, at *10 (S.D. Ohio July 24, 2019), *report and recommendation adopted*, No. 2:18-CV-1250, 2019 WL 3753823 (S.D. Ohio Aug. 8, 2019) (considering the ALJ's discussion of Plaintiff's depressive disorder at step two when determining if the RFC is supported). When considering the ALJ's opinion in its entirety, his evaluation of the state agency consultants' medical opinions is supported by substantial evidence.

Turning first to the state agency psychologists, the ALJ concluded that their opinions were "consistent with the overall objective evidence," uncontroverted, and persuasive. (R. at 22). As Plaintiff suggests, the ALJ did not use the word "supportability" in his evaluation of the state agency psychologists' opinions. Nor did he analyze all the evidence used to formulate their opinions in his evaluation. But the ALJ adequately addressed the supporting evidence elsewhere in his decision.

And he is not required to repeat his analysis. *Carlene C. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-245, 2022 WL 278168, at *5 (S.D. Ohio Jan. 31, 2022); *see Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (noting that the ALJ's entire decision must be considered).

Particularly, the ALJ reviewed all evidence in the record as to Plaintiff's mental impairments, summarizing that Plaintiff has

> severe insomnia; depressive disorder; anxiety; and post-traumatic stress disorder ("PTSD") (Record). The objective treatment notes consistently indicate that the [Plaintiff] has normal memory, including intact recent memory and intact remote memory (C3F/23, 28, 33, 38, 43, 48, 53; C7F/3, 8). The [Plaintiff]'s objective treatment notes consistently indicate that the [Plaintiff] has normal concentration ability, including "focused" attention and concentration with normal thought processes and thought content (C3F/23, 28, 33, 38, 43, 48, 53; C7F/3, 8). The [Plaintiff]'s objective treatment notes reveal that the [Plaintiff] has normal speech, associations, and receptive language skills (C2F/72; C3F/23, 28, 33, 38, 43, 48, 53; C7F/3, 8). The [Plaintiff]'s objective treatment notes consistently indicate that the [Plaintiff] has normal or "good" judgment and insight, with normal fund of knowledge (C3F/23, 28, 33, 38, 43, 48, 53; C7F/3, 8; C8F/3). The State Agency psychologists of record concluded that the [Plaintiff] has no more than moderate limitations in any area, including only mild limitations in understanding, remembering, or applying information (C4A; C6A). The State Agency psychologist opinions are uncontroverted. Therefore, the [Plaintiff]'s mental health impairments were accounted for with a limitation to performing only simple, routine, and repetitive one-to-two step tasks, with additional limitations to interaction, including limitations going to the quality of interaction, including no tandem tasks, as well as to the quantity of interaction, work pace, and work stress.

(R. at 21).  Reading the ALJ's entire treatment of the state agency psychologists' findings, it is clear that consideration was given to both the supportability and consistency of the findings.

Still more, while the ALJ's discussion of the state agency psychologists' finding was admittedly brief, this is perhaps in part because he adopted their opined limitations in full. (R. at 22).  Put simply, he did not need to distinguish the state agency psychologists' conclusions about Plaintiff's mental residual functional capacity from his own—which were elsewhere supported in detail and by substantial evidence.  (R. at 18–19, 21).  On appeal, Plaintiff has made no claim that the adopted RFC failed to properly capture her capacity for work, nor how the findings of the state

11

agency psychologists were erroneous. So, while she claims that the ALJ erred in his discussion of the findings, she makes no claim that the adopted findings—which the ALJ purportedly failed to explain—would materially affect her ultimate disability finding. For this reason too, any error in the ALJ's explanation is harmless. *See, e.g.*, *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) ("When 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'" (quoting *Nat'l Labor Relations Bd. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)); *id.* (citing *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.")).

All told, the ALJ assessed the supportability and consistency of the state agency psychologists' findings. And his conclusion that the findings were persuasive, as well as his ultimate RFC determination, were supported by substantial evidence. Regarding the state agency psychologists, Plaintiff's assignment of error is without merit.

Next, in evaluating the state agency physicians' opinions, the ALJ found:

> On October 5, 2020, and December 24, 2020, State Agency physicians, Dr. Klyop and Dr. Cacchillo reviewed [Plaintiff]'s file and objective evidence (C4A; C6A). Dr. Klyop and Dr. Cacchillo concluded that [Plaintiff] is limited to light work, and correctly recognized that the prior ALJ limitations do not apply, and neither found that a sit-stand option was warranted by the objective evidence. However, in curbing the evidence in a light most favorable to [Plaintiff], the undersigned finds that [Plaintiff] has greater postural limitations, especially to crawling. Thus, Dr. Klyop and Dr. Cacchillo's findings are somewhat consistent with the overall objective evidence. Therefore, Dr. Klyop and Dr. Cacchillo's opinions are somewhat persuasive.

(R. at 22). Again, Plaintiff says the ALJ failed to discuss supportability, making meaningful review of his decision impossible. (Doc. 9 at 7–9). And again, the Court disagrees. The ALJ considered the records that were directly discussed by the state agency physicians and that informed the basis

of their findings. So the ALJ functionally described supportability and the physicians' "reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Mary W. v. Comm'r of Soc. Sec.*, No. 2:20-cv-5523, 2022 WL 202764, at *8 (S.D. Ohio Jan. 24, 2022) (citing *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021)). For instance, the ALJ noted that Plaintiff

> has a history of fibromyalgia and chronic pain associated with lumbar degenerative disc disease (C2F; C5F). The [Plaintiff] has required only very conservative treatment for her impairments and reports of pain (Record). In addition, the [Plaintiff]'s non-compliance with smoking cessation recommendations are inconsistent with her reports of chronic pain as and smoking cigarettes is known to exacerbate chronic pain (Record). The objective examination findings consistent indicate that the [Plaintiff] consistently has normal gait, motor strength, and sensation despite pain with range of motion (C3F/43, 48, 53; C5F/5; C8F/3). Additionally, the record contains new objective evidence since her prior ALJ Decision, and there is no objective evidence supporting a finding that the [Plaintiff] requires a sit-stand option (C1A versus Record). The State Agency physicians of record concluded that the [Plaintiff] is limited to light work, with additional limitations, and their opinions are uncontroverted (C4A; C6A). Therefore, the [Plaintiff]'s impairments were accounted for with a limitation to light work, with a [sic] additional limitations, including to balance, climbing, and work hazards.

(R. at 21). Both state agency physicians utilized the same evidence in formulating their medical opinions (*see id.* at 85–92, 94–101) but failed to explain—given their review of Plaintiff's medical record and conclusion that her disorders of the back and fibromyalgia were severe impairments— why limited physical limitations were included in their opinion. So the ALJ added postural limitations to Plaintiff's RFC because he concluded that the state agency physicians' opinions were partially inconsistent with the evidence as a whole (including evidence not available to the physicians at the time of review) and partially unsupported by the evidence the physicians used to formulate their opinions. At base, it is clear to the Court that the ALJ discussed the particular objective evidence upon which the physicians based their findings and explained why that evidence was significant to Plaintiff's RFC.

And again, Plaintiff has made no claim that the adopted RFC failed to properly capture her capacity for work or how the ALJ's adoption of additional postural limitations would materially affect her ultimate disability finding. As such, any error in the ALJ's explanation is harmless. *See, e.g.*, *Kobetic*, 114 F. App'x 173. In sum, the ALJ properly considered supportability and consistency and supported his conclusion with substantial evidence. Plaintiff's assignment of error is without merit.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: March 24, 2023                                /s/ Kimberly A. Jolson
                                                    KIMBERLY A. JOLSON
                                                    UNITED STATES MAGISTRATE JUDGE